**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW MEXICO**

DANIEL RACETTE,

       Plaintiff,

v.                                                    Civ. No. 16-277 GJF/WPL

NANCY A. BERRYHILL, *Acting*
*Commissioner of the Social Security*
*Administration*,

       Defendant.

## ORDER DENYING PLAINTIFF'S MOTION TO REVERSE AND REMAND

THIS MATTER is before the Court on Plaintiff's "Motion to Reverse and Remand for Payment of Benefits, or in the Alternative, for Rehearing with Supporting Memorandum" ("Motion") [ECF No. 19]. Having meticulously reviewed the entire record, considered the parties' arguments, and being otherwise fully advised, the Court concludes that substantial evidence supports the Commissioner's decision to deny benefits and that proper legal standards were applied. Therefore, and for the following reasons, the Court will deny Plaintiff's Motion.

## I.  PROCEDURAL BACKGROUND

On February 16, 2010, Plaintiff applied for disability insurance benefits, alleging that his disability began on February 15, 2010. Administrative R. ("AR") 202-05. Plaintiff's application was initially denied on July 9, 2012 [AR 83-84], and upon reconsideration on May 3, 2012. AR 125-26. Plaintiff then filed a written request for a hearing, and, on July 8, 2014, Administrative Law Judge ("ALJ") Michelle Lindsay held a hearing in Albuquerque, New Mexico. Plaintiff testified at the hearing and was represented by non-attorney representative John Bishop. The ALJ also heard testimony from Judith Beard, an impartial vocational expert. AR 26-65.

On September 22, 2014, the ALJ issued a decision, concluding that Plaintiff had not been under a disability within the meaning of the Social Security Act ("the Act") since the date his application was filed. AR 12-20. Plaintiff requested the ALJ's decision be reviewed by the Appeals Council, and, on March 3, 2016, the Appeals Council denied his request. AR 1-5. Consequently, the ALJ's decision became the final decision of the Commissioner. Plaintiff timely filed his appeal in this Court on April 8, 2016.

## II.    STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), a court may review a final decision of the Commissioner only to determine whether the decision is supported by substantial evidence and whether the correct legal standards were applied. *See* 42 U.S.C. § 405(g) (2015); *see also Maes v. Astrue*, 522 F.3d 1093, 1096 (10th Cir. 2008) (citing *Hamilton v. Sec'y of Health & Human Servs.*, 961 F.2d 1495, 1497-98 (10th Cir. 1992)). If substantial evidence supports the ALJ's findings and the correct legal standards were applied, the Commissioner's decision stands, and the plaintiff is not entitled to relief. *See Langley v. Barnhart*, 373 F.3d 1116, 1118 (10th Cir. 2004); *see also Hamlin v. Barnhart*, 365 F.3d 1208, 1214 (10th Cir. 2004). "The failure to apply the correct legal standards or to provide this court with a sufficient basis to determine that appropriate legal principles have been followed is grounds for reversal." *Jensen v. Barnhart*, 436 F.3d 1163, 1165 (10th Cir. 2005) (internal quotation marks omitted). "In reviewing the ALJ's decision, 'we neither reweigh the evidence nor substitute our judgment for that of the agency.'" *Bowman v. Astrue*, 511 F.3d 1270, 1272 (10th Cir. 2008) (quoting *Casias v. Sec'y of Health & Human Servs.*, 933 F.2d 799, 800 (10th Cir. 1991)); *see also Hamlin*, 365 F.3d at 1214 ("[B]ecause our review is based on the record taken as a whole, [the Court] will meticulously examine the record in order to determine if the evidence supporting the agency's decision is substantial …").

Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Doyal v. Barnhart*, 331 F.3d 758, 760 (10th Cir. 2003) (quoting *Fowler v. Bowen*, 876 F.2d 1451, 1453 (10th Cir. 1989)). "A decision is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it." *Langley*, 373 F.3d at 1118 (quoting *Bernal v. Bowen*, 851 F.2d 297, 299 (10th Cir. 1988)). "The record must demonstrate that the ALJ considered all of the evidence, but an ALJ is not required to discuss every piece of evidence." *Clifton v. Chater*, 79 F.3d 1007, 1009-10 (10th Cir. 1996) (citation omitted). "Rather, in addition to discussing the evidence supporting his decision, the ALJ also must discuss the uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence he rejects." *Id.* at 1010. "The possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's findings from being supported by substantial evidence." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (quoting *Zoltanski v. F.A.A.*, 372 F.3d 1195, 1200 (10th Cir. 2004)).

## III.    SUMMARY OF ARGUMENTS

Plaintiff argues that the ALJ committed reversible legal error for three primary reasons: (i) the ALJ improperly concluded that Plaintiff's severe impairments did not meet the Listing of Impairments, (ii) the ALJ omitted key limitations from Plaintiff's residual functional capacity ("RFC") and erred in making credibility findings in calculating the RFC, and (iii) the positions identified by vocational expert ("VE") as ones that Plaintiff could occupy consistent with the RFC do not exist in significant enough numbers in the national economy. *See* Pl.'s Mot. 1, ECF No. 19, *passim*. In opposition, the Commissioner contends that (i) the ALJ properly found that Plaintiff's impairments did not meet or medically equal a listed impairment, (ii) the ALJ's

finding that Plaintiff's RFC permitted him to perform a limited range of sedentary work was based on substantial evidence and otherwise properly calculated, and (iii) the VE committed no error in identifying positions that exist in sufficient numbers in our national economy that Plaintiff could perform consistent with his RFC.  *See* Def.'s Br. in Resp. to Pl.'s Mot. ("Def.'s Resp."), ECF No. 21, *passim*.

## IV.    APPLICABLE LAW AND SEQUENTIAL EVALUATION PROCESS

### A.  Legal Standard

For purposes of Social Security disability insurance benefits, the term "disability" means "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A) (2012).    To determine if an individual is disabled, the Social Security Administration utilizes a five-step sequential evaluation process, 20 C.F.R. § 404.1520 (2015), with each step being followed in order.  *Id.* § 404.1520(4).  If it is conclusively determined that the individual is or is not disabled at any step of the evaluation process, the evaluation does not go on to the next step.  *Id.*

The claimant bears the burden of establishing a prima facie case of disability at steps one through four.  *Williams v. Bowen*, 844 F.2d 748, 750-52 (10th Cir. 1988).

> At step one, the claimant must show "that he is not presently engaged in substantial gainful activity;" at step two "that he has a medically severe impairment or combination of impairments;" at step three that the impairment is "equivalent to a listed impairment;" and, at step four, "that the impairment or combination of impairments prevents him from performing his past work."

*Grogan v. Barnhart*, 399 F.3d 1257, 1261 (10th Cir. 2005) (quoting *Williams*, 844 F.2d at 750-52).  At step five, "the burden shifts to the Commissioner to show the claimant retains sufficient

residual functional capacity (RFC) to perform work in the national economy, given his age, education, and work experience." *Id.* (quoting *Williams*, 844 F.2d at 751).

### B. ALJ Decision

On September 22, 2014, the ALJ issued a decision denying Plaintiff's application for benefits. In doing so, the ALJ conducted the five-step sequential evaluation process. AR 12-20. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since February 15, 2010, the date of his alleged disability onset. At step two, the ALJ determined Plaintiff had the following severe impairments: immunoglobulin deficiency and recurrent pneumonia. The ALJ found these impairments to be severe because "they cause more than a minimal limitation on the [Plaintiff's] ability to perform basic work activities." AR 14.

At step three, the ALJ concluded that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of a listed impairment in 20 C.F.R. Part 404, Subpart P, Appendix 1. The ALJ evaluated Plaintiff's impairments under Listings 3.02 and 14.07 to reach this conclusion. Focusing first on Plaintiff's recurrent pneumonia, the ALJ found that the "available medical evidence did not demonstrate chronic obstructive pulmonary disease." AR 14-15.[1] Next, the ALJ found that Plaintiff's condition did not satisfy the paragraph A criteria for Listing 14.07 (immune deficiency disorders) because there was no medical evidence to illustrate that Plaintiff had an infection that was resistant to treatment.[2] The ALJ also determined that there was insufficient medical evidence upon which to

---

[1] In 2014, when the ALJ issued her decision, Listing 3.02 was entitled "Chronic Pulmonary Insufficiency." 20 C.F.R. § 404, Subpt. P, App. 1 (2014). That listing appears to have since been retitled as "Chronic Respiratory Disorder." 20 C.F.R. § 404, Subpt. P, App. 1 (2017). Regardless, Plaintiff does not challenge the ALJ's finding that Plaintiff had failed to establish that his lung condition and history of recurrent pneumonia met or medically equaled the criteria set forth in Listing 3.02. *See* Pl.'s Mot. 15-17. Instead, Plaintiff challenges only the ALJ's findings concerning Listing 14.07, entitled "Immune Deficiency Disorders." *Id. See also* Pl.'s Reply. 1-2 (similarly limited to Plaintiff's immune deficiency condition).

[2] Paragraph A in Listing 14.07 sets forth the following criteria:

conclude that Plaintiff had satisfied the criteria for either paragraphs B or C of Listing 14.07.[3]
AR 15.

Before step four, the ALJ determined Plaintiff had the following residual functional
capacity ("RFC"): "[T]o perform sedentary work as defined in 20 C.F.R. 404.1567(a) and
416.967(a) except he is never able to climb ladders, ropes[,] or scaffolds and he must avoid
frequent exposure to pulmonary irritants such as fumes, odors, dusts, gases[,] and poor
ventilation." AR 15. In support of this RFC assessment, the ALJ found that "[Plaintiff's]
medically determinable impairments could reasonably be expected to cause the alleged
symptoms; however, [Plaintiff's] statements concerning the intensity, persistence and limiting
effects of these symptoms are not entirely credible . . . ." AR 16. In reaching this determination,

---

A. One or more of the following infections. The infection(s) must either be resistant to treatment or
   require hospitalization or intravenous treatment three or more times in a 12-month period.

   1. Sepsis; or
   2. Meningitis; or
   3. Pneumonia; or
   4. Septic arthritis; or
   5. Endocarditis; or
   6. Sinusitis documented by appropriate medically acceptable imaging.

20 C.F.R. § Pt. 404, Subpt. P, App. 1, Pt. A2 (2016).

[3] Paragraph B in Listing 14.07 provides:

B. Stem cell transplantation as described under 14.00E3. Consider under a disability until at least 12
   months from the date of transplantation. Thereafter, evaluate any residual impairment(s) under the
   criteria for the affected body system.

Paragraph C in Listing 14.07 states:

C. Repeated manifestations of an immune deficiency disorder, with at least two of the constitutional
   symptoms or signs (severe fatigue, fever, malaise, or involuntary weight loss) and one of the
   following at the marked level:

   1. Limitation of activities of daily living.
   2. Limitation in maintaining social function.
   3. Limitation in completing tasks in a timely manner due to deficiencies in concentration,
      persistence, or pace.

20 C.F.R. § Pt. 404, Subpt. P, App. 1, Pt. A2 (2016).

the ALJ adopted portions of two state agency medical consultants' opinions. AR 18. Additionally, although the ALJ considered opinions from Plaintiff's treating physician, a consultative examiner, and Plaintiff's wife, she assigned "little weight" to each of these three opinions for reasons that the ALJ explained. AR 17.

At the fifth and final step, the ALJ noted that Plaintiff was born on December 24, 1966, and was therefore 43 years old as of the alleged disability onset date, which is considered to be a "younger individual" pursuant to 20 C.F.R. §§ 404.1563 and 416.963. The ALJ further noted that Plaintiff has at least a high school education, is able to communicate in English, and that he "has acquired work skills from past relevant work." AR 18. The ALJ determined that Plaintiff would not be able to perform any past relevant work as a karate instructor, desk clerk, satellite installer, or a sales clerk. AR 18. Thereafter, the ALJ asked the vocational expert "if any occupations exist which could be performed by an individual with the same age, education, past relevant work experience, and residual functional capacity as [Plaintiff], and which require skills acquired in the [Plaintiff's] past relevant work but no additional skills." AR 19. The VE testified that such an individual would be capable of working in the following jobs: appointment clerk (DOT 237.367-010), document preparer (DOT 249.587-018), and jewelry preparer (DOT 700.687-062). Subsequently, the ALJ concluded that Plaintiff was not disabled under the meaning of the Act from February 15, 2010, through the date of the decision. AR 20.

V. **ANALYSIS**

A. **Listing of Impairments**

Plaintiff first challenges the ALJ's finding at step three that his impairments, either individually or in combination, do not meet or equal Listed Impairment 14.07 (immune deficiency disorders). Pl.'s Mot. 15-17. According to Plaintiff, the ALJ failed to describe which

paragraphs of that listing she considered, which he claims has hindered his ability to challenge the finding. *Id.* Additionally, Plaintiff asserts that he presented medical evidence that was sufficient to prove that he does meet the requirement of both paragraphs A and C of Listing 14.07. *Id.* The Commissioner argues that Plaintiff cannot show that he satisfied the criteria either for Listing 14.07(A) or (C). Def.'s Resp. 6-7. Therefore, the ALJ reasonably concluded that the evidence failed to document the criteria from Listing 14.07 and proceeded with the sequential evaluation process. *Id.* at 7.

At step three of the sequential evaluation process, the ALJ must determine whether a claimant's impairment is "equivalent to one of a number of listed impairments that the Secretary acknowledges as so severe as to preclude substantial gainful activity." *Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1997) (quoting *Williams v. Bowen*, 844 F.2d 748, 751 (10th Cir. 1988)). To do so in a manner that sufficiently permits meaningful judicial review, the Tenth Circuit has held that an ALJ is "required to discuss the evidence and explain why [the ALJ] found that [the claimant] was not disabled at step three." *Id.* Statements containing summary conclusions that a claimant's impairments do not meet or equal a Listed Impairment are considered to be "bare conclusions" that do not permit meaningful judicial review. *Id.* Instead, an ALJ is required to discuss the evidence that both supports her decision as well as the evidence that she chose not to rely upon. *Id.* at 1010. It is not required, however, that an ALJ discuss every piece of evidence. *Id.* at 1009.

The ALJ's analysis of whether Plaintiff's immune deficiency disorder satisfied Listing 14.07(A)-(C) was set forth in a single paragraph:

> With regard to the claimant's autoimmune disorder, I gave particular attention to Listing 14.07, Immune Deficiency Disorders. The available medical evidence does not demonstrate sepsis, meningitis, pneumonia, septic arthritis, endocarditis or sinusitis that was resistant to treatment; or stem cell transplantation; or repeated

manifestations of an immune deficiency disorder with at least two of the constitutional symptoms and one of the following at the marked level: limitation of activities of daily living, maintaining social functioning or completing tasks in a timely manner due to deficiencies in concentration, persistence and pace. Specifically, the evidence failed to document any of the above criteria.

AR 15.

Although this analysis is thin, it is not impermissibly threadbare, for it still provides this Court with the material it needs to meaningfully review this claim.[4] In its own plain language, Listing 14.07 provides three separate, alternative, and distinct ways by which a claimant can demonstrate that his immune deficiency disorder is sufficiently serious to automatically qualify as disabling. It is clear to this Court that the ALJ evaluated whether Plaintiff's evidence met the criteria of any of the three paragraphs, and concluded that it did not. This Court agrees.

To satisfy the criteria of Listing 14.07(A), a claimant must demonstrate that (1) he has one or more of a list of six infections, *and* (2) that the infection is *either* resistant to treatment *or* "require[s] hospitalization or intravenous treatment three or more times in a 12-months period." 20 C.F.R. § Pt. 404, Subpt. P, App. 1, Pt. A2 (2016). In neither his Motion nor his Reply does Plaintiff argue that the ALJ should have found that he had one or more of the six listed infections. *See* Pl.'s Mot. 15-17; Pl.'s Reply 1-2. This omission is puzzling, as the Court's own review of the evidence reflects that Plaintiff at the very least has suffered from recurrent pneumonia, one of the six enumerated infections. Indeed, recurrent pneumonia is one of the two severe impairments that the ALJ ascribed to Plaintiff. AR 14.

---

[4] This case is distinguishable from *Clifton v. Chater* because the ALJ in this case identified and analyzed two specific Listed Impairments that most closely matched Plaintiff's severe impairments. Plaintiff does not contend that the ALJ should have considered any other Listed Impairment besides Listing 14.07. In *Clifton*, in contrast, the ALJ summarily concluded that the claimant's impairments did not meet or medically equal *any* Listed Impairment and did not even bother attempting to identify any relevant ones. 79 F.3d at 1009. That utter failure by the ALJ, which understandably resulted in remand, is not what happened here.

Nonetheless, even if Plaintiff had asserted that his recurrent pneumonia matched or medically equaled the "pneumonia" enumerated in Listing 14.07(A), his proof still would have fallen short, for that provision requires more. To satisfy subparagraph A, Plaintiff would *also* have to show that his pneumonia was either resistant to treatment *or* that the treatment for it "require[s] hospitalization or intravenous treatment three or more times in a 12-month period." 20 C.F.R. § Pt. 404, Subpt. P, App. 1, Pt. A2 (2016). To this point, Plaintiff contends only that his regular intravenous treatment should meet that test. After all, he receives such treatment as often as weekly. *See* Pl.'s Mot. 15-16.[5] But the record makes clear that he receives that treatment for his immune deficiency rather than for pneumonia. *See, e.g.,* AR 337 (reflecting that immunotherapy prescribed for antibody production deficiency). Plaintiff points to no evidence in the record (nor did the Court locate any) demonstrating that his intravenous injections were or are prescribed to treat pneumonia. Consequently, this Court concludes that the ALJ did not err in finding that Plaintiff did not satisfy his burden under Listing 14.07(A).[6]

Whether the ALJ was correct in finding that Plaintiff also did not satisfy the criteria under Listing 14.07(C) is a closer question but one the Court answers in a similar manner. That subparagraph requires the following:

> Repeated manifestations of an immune deficiency disorder, with at least two of the constitutional symptoms or signs (severe fatigue, fever, malaise, or involuntary weight loss) and one of the following at the marked level:
>
> 1. Limitation of activities of daily living.
> 2. Limitation in maintaining social function.
> 3. Limitation in completing tasks in a timely manner due to deficiencies in concentration, persistence, or pace.

---

[5] Plaintiff does not contend that his pneumonia caused him to be hospitalized at least three times in a given year. The Court's review of the evidence reflects only a single hospitalization in January 2008 for pneumonia. AR 345.

[6] The Court also affirms the ALJ's implicit finding that Plaintiff did not satisfy Listing 14.07(B), which requires stem cell transplantation. AR 15. Plaintiff does not argue that he has ever received that treatment.

20 C.F.R. § Pt. 404, Subpt. P, App. 1, Pt. A2 (2016).

To this point, Plaintiff contends only that he "provided ample evidence of marked limitation in his activities of daily living due to severe fatigue and malaise." Pl.'s Mot. 16 (citing his treating physician's notes at AR 316, 318, 362, as well as his own testimony and other reports at AR 40-41, 240, 253, 288). In so doing, Plaintiff has limited his claim to whether the evidence showed severe fatigue and malaise as his two "constitutional symptoms or signs" and a "marked" limitation in his activities. For her part, the Commissioner responds only by offering that "[a]s the ALJ reasonably noted, the evidence failed to document any of these criteria." Def.'s Resp. 7 (citation and footnote omitted).[7]

Mindful of its limited standard of review, *supra* at 2-3, the Court has reviewed every one of the record citations on which Plaintiff has staked his claim, as well as all other relevant records. And after doing so, the Court is left with the distinct impression that this evidence did not establish that Plaintiff suffers (or suffered) from "severe fatigue." To be sure, there is some reference in Dr. Roche's treatment notes to "fatigue" but nothing that can fairly be described as "severe fatigue." *See, e.g.,* AR 315 (noting on 1/17/12 that Plaintiff "has had *some* fatigue") (emphasis added); 316 (noting on 10/24/11 that Plaintiff had "some associated fatigue"); 318 (noting on 8/3/10 that Plaintiff was self-reporting fatigue as one of multiple side effects associated with intravenous immunotherapy). But other records made by Dr. Roche in the relevant time frame make no mention of Plaintiff suffering any fatigue at all. *See, e.g.,* AR 317, 319, 320, 321, 362. The rest of the record citations on which Plaintiff relies are his own

_____

[7] It is enough to say that the Court is disappointed in the thoroughness of the Commissioner's response on this point. The Court would have benefited from an informed debate between the parties as to whether the record citations on which Plaintiff is relying to establish his claim that he satisfied Listing 14.07(C) do or do not suffice. Instead of participating in that debate, however, the Commissioner addresses not a single one of those record citations, uses a footnote to minimize the importance of a record reference on which Plaintiff did *not* rely for this point, and summarily says in essence that "the ALJ got it right." This Court expects more assistance from the Commissioner in the future.

statements made to the Social Security Administration describing his symptoms, treatment, and side effects. In each of these instances, Plaintiff merely mentions being tired before spending substantially more time describing more salient side effects such as nausea, diarrhea, migraines, and sensitivity to sunlight. *See, e.g.,* AR 240 ("I wake up, throw up, go back to sleep, monitory my kids while they do their home schooling, but I mostly throw up all day. Some days I have migraines and take medicine which put me in a fog."); 288 ("I can't go outside because of the light. I can't sleep at all. I get tired very easily."); 40-41 (testifying that the therapy "makes me very tired" before spending substantially more time describing the associated nausea, diarrhea, migraines, and sensitivity to sunlight). While the Court does not doubt that Plaintiff must deal with a variety of unfortunate complications associated with his immunotherapy, the Court cannot conclude that the ALJ's implicit finding that Plaintiff had not proven that he suffers from "severe fatigue" must be reversed based on a lack of substantial evidence. Indeed and to the contrary, its own review of the record evidence compels this Court to affirm the ALJ's finding as based on substantial evidence.

Because of the manner in which Plaintiff limited his claim under Listing 14.07(C), it was essential for him to prove that the ALJ erred in not finding that he suffered from severe fatigue. Having concluded that Plaintiff failed to do so, the Court need not analyze or decide whether the evidence supports or rejects a finding of "malaise" or whether Plaintiff has suffered a marked limitation in his activities of daily living. The Court expresses no view on either topic.[8]

---

[8] Plaintiff also criticizes the ALJ for "failing to evaluate the myriad and disabling effects of the treatment" itself. Pl.'s Mot. 16-17. The Court disagrees, as the ALJ's decision makes clear that she did consider those effects (and the various sources from which evidence of the effects was derived) but found that they were not serious enough to be disabling. *See, e.g.*, AR 18.

**B. Plaintiff's Residual Functional Capacity**

As his second ground for remand, Plaintiff advances three independent and alternative arguments as to how the ALJ erred in arriving at Plaintiff's RFC: (1) the ALJ failed to include (or to sufficiently explain the exclusion of) certain limitations that were found by Plaintiff's treating physician and a consultative psychologist; (2) the ALJ failed to perform a "function-by-function" analysis of Plaintiff's ability as measured against seven strength demands enumerated in SSR 96-8p; and (3) the ALJ erred in considering and to some extent discounting Plaintiff's credibility. *See* Pl.'s Mot. 17-22. The Court addresses these arguments in turn.

**1. Assessment of Medical Opinion Evidence**

Plaintiff first asserts that the ALJ improperly failed to include or to sufficiently explain the exclusion of certain physical and behavioral limitations that were found by his treating physician and a consultative psychologist. *See id.* 17-19. He implicitly contends that, had the ALJ followed these medical opinions in their entirety, she would have concluded that Plaintiff was disabled and entitled to benefits.

**a. Richard Roche, M.D.**

The record reflects that Dr. Richard Roche served as Plaintiff's primary physician beginning at least by September 29, 2009, the date of the earliest medical record included in the administrative record. *See* AR 323. The record reflects that, from September 2009 until September 2013, Dr. Roche treated Plaintiff on approximately fifteen occasions, for issues primarily related to his immunodeficiency disorder, including sinus and lung infections, chest wall pain, headaches, and general follow up. *See* AR 315-323, 361-65, 373. The last visit by Plaintiff that Dr. Roche memorialized occurred on September 10, 2013, during which Dr. Roche

issued refill prescriptions for two medications, ordered some lab tests, and otherwise continued the treatment regime that Plaintiff long had been undergoing. AR 373.

The crux of Plaintiff's argument here zeroes in on the ALJ's consideration of a "Medical Source Statement of Ability to Do Work-Related Activities (Physical)" that Dr. Roche completed on May 30, 2014. AR 378-81. This form was completed approximately nine and a half months after Dr. Roche had last seen Plaintiff. In the Medical Source Statement, Dr. Roche assessed Plaintiff for limitations in four broad categories: exertional, postural, manipulative, and visual/communicative. *Id.* The only assessments that are relevant to Plaintiff's complaints about his RFC are those related to his abilities to lift/carry, stand/walk, sit, push/pull, and balance/kneel/crouch/stoop. *See* Pl.'s Mot. 18.

In the Medical Source Statement, Dr. Roche opined that Plaintiff could "occasionally" lift and/or carry 10 pounds, could stand and/or walk "less than 2 hours in an 8-hour workday," could sit "less than about 6 hours in an 8-hour workday," and that Plaintiff's ability to push and/or pull was limited in his upper extremities. AR 378-79. Where asked to set forth the "medical/clinical finding(s) [that] support your conclusions," Dr. Roche wrote only "weakness + [unintelligible] in UE [upper extremities] on strength testing." AR 379. With respect to postural limitations, Dr. Roche opined that Plaintiff should never climb or crawl, and that he should only occasionally balance, kneel, crouch or stoop. *Id.* To substantiate these opinions, Dr. Roche wrote: "After receiving immunoglobulin infusions[,] [Plaintiff] has 3-4 days of extreme fatigue, weakness, headaches above [sic] symptoms[.]" *Id.*[9]

Regarding Dr. Roche's opinions included in the Medical Source Statement, the ALJ stated that:

---

[9] Although not at issue in this Motion, Dr. Roche also found that Plaintiff had no manipulative or visual/communicative limitations at all. AR 380.

> This opinion is given little weight, as it is inconsistent with the doctor's own treatment notes. The [Plaintiff] does report some fatigue following his infusions but there is no evidence to support the fatigue severely limiting the [Plaintiff's] ability to work. Additionally, Dr. Roche limited the claimant to lifting only 10 pounds occasionally; however, the [Plaintiff] himself indicated he could lift 50 pounds.

AR 17.

Plaintiff argues the ALJ violated the treating physician rule during her evaluation of Dr. Roche's opinions because she provided inadequate analysis. He argues that if the ALJ had given more weight to Dr. Roche's opinions, his resulting RFC would be different. Pl.'s Mot. 17-18. The Commissioner contends that "the ALJ reasonably determined that Dr. Roche's opinion was entitled to little weight" because of the inconsistencies she found between it and Dr. Roche's treatment notes. Def.'s Resp. 12.

"Under the regulations, the agency rulings, and our case law, an ALJ must 'give good reasons in [the] notice of determination or decision' for the weight assigned to a treating physician's opinion." *Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003) (quoting 20 C.F.R. § 404.1527(d)(2) (2003)). The notice of determination or decision "must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Id.* (quoting SSR 96-2p, 1996 WL 374188, at *5). When evaluating a treating source medical opinion as to the nature or severity of an individual's impairments, an ALJ should "[g]enerally . . . give more weight to opinions from [claimant's] treating sources." 20 C.F.R. § 404.1527(d)(2) (2016). "The treating physician's opinion is given particular weight because of his unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations." *Hamlin v. Barnhart*,

365 F.3d 1208, 1215 (10th Cir. 2004) (citing *Doyal v. Barnhart*, 331 F.3d 758, 762 (10th Cir. 2003)).

The Tenth Circuit has explained that resolving whether a medical opinion is entitled to controlling weight does *not* conclude the analysis:

> [A]djudicators must remember that a finding that a treating source medical opinion is not well-supported by medically acceptable clinical and laboratory diagnostic techniques or is inconsistent with the other substantial evidence in the case record means only that the opinion is not entitled to "controlling weight," not that the opinion should be rejected. Treating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in 20 C.F.R. § 1527 and 416.927.

*Id.* (quoting SSR 96-2p, 1996 WL 374188, at *4). The factors set forth in 20 C.F.R. §§ 1527 and 416.927 are:

> (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion.

*Id.* at 1301 (citing *Drapeau v. Massanari*, 255 F.3d 1211, 1213 (10th Cir. 2001)). Not every factor is applicable in every case, nor should all six factors be seen as absolutely necessary. What is absolutely necessary, though, is that the ALJ give good reasons – reasons that are "sufficiently specific to [be] clear to any subsequent reviewers" – for whatever weight she ultimately assigns to the opinions. *Langley*, 373 F.3d at 1119 (10th Cir. 2004). Further, if an ALJ rejects the medical opinion in its entirety, he or she must provide "specific, legitimate reasons" for doing so. *See Miller v. Chater*, 99 F.3d 972, 976 (10th Cir. 1996) (quoting *Frey v. Bowen*, 816 F.2d 508, 513 (10th Cir. 1987)).

The Court concludes that the ALJ did not violate the treating physician rule or commit any other error in evaluating Dr. Roche's opinions about Plaintiff's exertional and postural limitations. Although the Court's review would have been better served if the ALJ had offered more explanation, her decision to assign his opinion "little weight" was sufficiently explained so as to permit meaningful judicial review.

It is clear that the ALJ considered the Medical Source Statement in its entirety and in the context of all of the medical records submitted. Furthermore, the ALJ did not reject Dr. Roche's opinions in their entirety, but instead appears to clearly have given at least some weight to certain of them. After all, the ALJ disagreed with the State's reviewing doctors' assessment that Plaintiff could work at the "medium exertional level" and restricted him to only a limited category of sedentary jobs. AR 18 ("[b]ased on additional evidence received at the hearing level and the claimant's testimony, I further limited the claimant to work at the sedentary level."). Furthermore, in the RFC, the ALJ also adopted Dr. Roche's opinion that Plaintiff never climb ladders, ropes or scaffolds. AR 15. Finally, Dr. Roche's opinions about Plaintiff's ability to lift/carry, push/pull, balance, kneel, crouch, and stoop are accounted for in the sedentary jobs of appointment clerk, document preparer, and jewelry preparer for which the ALJ found Plaintiff to be qualified. AR 19.

There are still other reasons supporting the Court's conclusion that the ALJ did not commit legal error in evaluating Dr. Roche's opinions. For one, Dr. Roche's narrative explanation substantiating his opinion with respect to exertional limitations was merely "weakness + [unintelligible] in UE [upper extremities] on strength testing." AR 379. This abbreviated explanation completely failed to comply with the Medical Source Statement's requirement to "provide explanation of the precise limitation" identified in Plaintiff's ability to

stand and/or walk.  AR 378.  Whatever can be said about the strength of Plaintiff's upper extremities does not speak to his ability to stand or walk.[10]

In addition, after its own review of the seventeen pages of medical records that document Dr. Roche's treatment of Plaintiff, the Court cannot find fault with the ALJ's conclusion that Dr. Roche's opinions about Plaintiff's exertional limitations are inconsistent with the treatment notes.  AR 17.  There is no meaningful information at all in those records that speaks to the issue of whether Plaintiff can stand and/or walk for more or less than two hours, or sit for more or less than six hours.  Given the threadbare and incomplete narrative provided by Dr. Roche to support his opinions on the exertional limitations that are at issue, and given the paucity of any treatment records that pertain to those limitations, the Court cannot conclude that the ALJ erred in giving little weight to Dr. Roche's opinions.  It would be altogether different if the ALJ were discounting Dr. Roche's opinions that Plaintiff suffers from lung-related illnesses, frequent infections, and a compromised immune system for which immunotherapy is needed.  But those opinions are *not* at issue.  Instead, the issue before the Court centers around the same doctor now offering opinions about Plaintiff's ability to exert himself for an 8-hour sedentary workday without any meaningful connection between the opinions and the records that document the doctor's course of treatment.

Turning to the ALJ's evaluation of Dr. Roche's opinions of Plaintiff's postural limitations, the Court concludes again that the ALJ did not err.  First, the ALJ discounted the

---

[10] The Court also questions another aspect of the Medical Source Statement, which arises from Plaintiff's bold-faced assertion that Dr. Roche found that Plaintiff "[c]an do *no frequent* carrying or lifting."  Pl.'s Mot. 18 (emphasis added).  The Court worries that this assertion goes too far, as it appears that Dr. Roche simply failed to check any block at all as it relates to Plaintiff's ability to "frequently" lift or carry.  The possible ratings that Dr. Roche could have chosen include everything from negligible or even no weight ("less than ten pounds") to "100 pounds or more."  AR 378.  But he checked none of them.  The Court believes this omission to be more the product of inadvertent oversight than an implied opinion that his patient can frequently carry nothing at all.  Given the Court's decision that one or more of the jobs for which Plaintiff is qualified requires no frequent carrying or lifting at all, however, the Court need not decide this issue nor remand it for further fact-finding.

portion of Dr. Roche's justification for these limitations that was based on Plaintiff's claims of "extreme fatigue." *See* AR 379 (Medical Source Statement) and 17 (ALJ's decision noting that "[t]he claimant does report some fatigue following his infusions but there is no evidence to support the fatigue *severely* limiting the claimant's ability to work"). The Court agrees with the ALJ, as it explained earlier in this Order its view that Plaintiff did not meet his burden to prove that he suffers from "severe fatigue. *See supra* 11-12. More important, however, is that the debate over whether the ALJ properly evaluated Dr. Roche's opinions about postural limitations is moot because *none* of the three jobs for which the ALJ found Plaintiff to be qualified requires him to do *any* of the postures identified in the limitations. Consequently, the Court need not address the postural limitations any further.

The Court must emphasize that it is entirely the province of the ALJ to resolve factual conflicts including those that exist in the medical evidence in the record. Whether the Court would have resolved those factual conflicts differently if it were reviewing the evidence *de novo* is not the subject of this Order. The Court is constrained to apply the deference commanded by substantial evidence review. "In reviewing the ALJ's decision, 'we neither reweigh the evidence nor substitute our judgment for that of the agency.'" *See Bowman v. Astrue*, 511 F.3d 1270, 1272 (10th Cir. 2008) (quoting *Casias v. Sec'y of Health & Human Servs.*, 933 F.2d 799, 800 (10th Cir. 1991)). On review, this Court must only determine whether the ALJ provided sufficiently clear reasons for the weight she ultimately assigned to Dr. Roche's opinions. The Court holds that the ALJ's explanation regarding Dr. Roche's opinions, though brief, was nonetheless sufficiently precise so as to allow for meaningful review. And having conducted that review as set forth above, the Court will deny Plaintiff's claim to the contrary.

### b. Eligio Padilla, Ph.D.

Eligio Padilla is a psychologist who served as a consultative examiner at the request of the state agency. He conducted a one-time mental evaluation of Plaintiff on May 29, 2012. This evaluation consisted of an interview, a mental status examination, and the administration of Wechsler Adult Intelligence Scale IQ testing instrument. AR 350. Doctor Padilla reviewed a "function report" completed by Plaintiff's spouse in advance of the exam, but did not have access to any other records "that would independently corroborate [Plaintiff's] medical, psychiatric and educational history." AR 350.

Because of the unavailability of any medical records, Dr. Padilla's report was predicated to a significant extent on Plaintiff's subjective statements about his condition and symptoms, including pain, irritability, distractibility, and trouble sleeping. Taking into account what Plaintiff had told him during the interview, as well as data generated during the examination and testing that Dr. Padilla himself administered, Dr. Padilla opined:

> Mr. Racette is a very intelligent individual who complains of trouble focusing his attention and completing what he intends to do. He reportedly is short-tempered and irritable, but does not appear to be suffering from clinical depression or anxiety, although he may be susceptible to a mood disorder if his physical condition continues to deteriorate. From a psychological perspective, his prognosis would appear to be fair, but his prognosis actually will depend upon his physical status. The physicians who have treated him are more appropriate sources regarding his prognosis.

AR 355.

At the conclusion of his report, Dr. Padilla completed a "Psychological Source Statement of Ability to Do Work-Related Activities," wherein he assessed Plaintiff's abilities in more than ten categories. AR 356-57. Doctor Padilla concluded that Plaintiff was "not limited" in one area, "mildly limited" in six areas, "moderately limited" in his ability to work without

supervision, and "markedly limited" in three areas, specifically, (1) his ability to adapt to changes in the workplace, (2) his ability to be aware of normal hazards and react appropriately, and (3) his ability to use public transportation or travel to unfamiliar places.[11] AR 356. Doctor Padilla also believed that Plaintiff does not have a problem with alcohol or substance abuse, and that Plaintiff can manage benefits in his best interests. *Id.*

The Court notes that – with one exception – Doctor Padilla included a description of the "basis for limitations" for each of the areas in which he found any limitation, whether mild or moderate. Each of those bases was derived from information that Plaintiff (or his wife) reported to Doctor Padilla. AR 356 ("*reported difficulties* focusing his attention and forgetting what he was intending to do") (emphasis added). But Doctor Padilla did not provide a "basis for limitations" with respect to his opinion that Plaintiff is "markedly limited" in the three adaptation abilities enumerated above. AR 356. That unexplained and conspicuous omission has compromised the Court's ability to evaluate the propriety of the ALJ's consideration of Dr. Padilla's opinion.

In her decision, the ALJ discussed the findings from Dr. Padilla's consultative examination and explained the weight she assigned to his opinions. AR 16-17. Specifically, with respect to the doctor's opinions that Plaintiff was moderately limited in his ability to work without supervision and markedly limited in his ability to adapt to changes in the workplace, the ALJ wrote that "[t]his opinion is not consistent with [Dr. Padilla's] examination and is given little weight." AR 17. The ALJ further explained that:

> Dr. Padilla's evaluation showed the claimant's attention and concentration were in the superior range and his ability to process routine material without making errors was in the high average range. The evidence fails to show that the claimant would have a

---

[11] In his Motion, Plaintiff complains only of the ALJ's alleged failure to adopt and include those categories in which Dr. Padilla found Plaintiff to be either "moderately" or "markedly" limited. *See* Pl.'s Mot. 19.

> marked limitation adapting to change in the workplace. He
> testified that he was able to begin a new position as a dispatcher
> and he stopped working because the company moved and not due
> to his condition.

*Id.*

Plaintiff challenges the ALJ's treatment of Dr. Padilla's opinion, arguing that she impermissibly substituted her opinion for that of the medical expert. Pl.'s Mot. 19. The Commissioner disagrees, stating that the ALJ "reasonably discounted Dr. Padilla's opinion that Plaintiff had marked limitations in adaptation skills." Def.'s Resp. 12.

The governing regulations require that "[r]egardless of its source," the ALJ "will evaluate every medical opinion" received. 20 C.F.R. § 404.1527(c). The regulations define medical opinions as "statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite impairment(s), and your physical or mental restrictions." *Id.* § 404.1527(a)(2). Social Security Ruling 96-6p provides guidance on how to consider opinions of consultative examiners, including opinions of psychological consultants. SSR 96-6p, 1996 WL 374180 (July 2, 1996). Findings of fact made by a consultative examiner "must be treated as expert opinion evidence of nonexamining sources." *Id.* at *1. ALJs and the Appeals Council may not ignore these opinions and must explain the weight given to these opinions. *Id.* at *2. The Ruling explains that because opinions of consultative examiners are weighed by stricter standards than those who are treating sources,

> the opinions of State agency medical and psychological consultants and other
> program physicians and psychologists can be given weight only insofar as they
> are supported by evidence in the case record, considering such factors as the
> supportability of the opinion in the evidence including any evidence received at
> the administrative law judge and Appeals Council levels that was not before the
> State agency, the consistency of the opinion with the record as a whole, including
> other medical opinions, and any explanation for the opinion provided by the State
> agency medical or psychological consultant or other program physician or

psychologist.

*Id.*

The Court finds that the ALJ did not err in her treatment of Dr. Padilla's opinion. SSR 96-6p makes clear that an ALJ must explain the weight given to a consultative examiner's opinions. In this case, the ALJ did exactly that. She assigned little weight to Dr. Padilla's opinion about those work-related areas in which he had found Plaintiff to have either moderate or marked limitations. Then she articulated her reasons for doing so. Most notably, the ALJ explained why she discounted Dr. Padilla's opinion as it related to Plaintiff's "marked" limitations. AR 17. Mindful of its "substantial evidence" standard of review, this Court cannot find fault with the ALJ's consideration of Dr. Padilla's opinions. Therefore, the Court will deny Plaintiff's claim on this ground.[12]

### 2. Credibility Determination

Plaintiff next contends that the ALJ erred in assessing Plaintiff's credibility regarding his complaints of limitations due to fatigue, headaches, and pain. Pl.'s Mot. 20. The Commissioner argues that "[t]here were no objective findings corroborating Plaintiff's allegations of disabling functional limitations." Def.'s Resp. 10.

---

[12] Plaintiff complains in a single paragraph that the ALJ also erred in failing to include a "function-by-function" analysis of Plaintiff's ability as measured against seven strength demands as set forth in SSR 96-8p. *See* Pl.'s Mot. 20. The Court disagrees. It is clear from the RFC, as well as the rest of the ALJ's decision, that the ALJ necessarily assessed Plaintiff's abilities in those areas before finding him qualified to perform only sedentary jobs with additional postural limitations. It is also clear, contrary to Plaintiff's contention, that the ALJ did not "ignore evidence that is favorable to [Plaintiff's] claim that he is disabled." *Id.* Instead, the ALJ considered all of the evidence – from every source – and then sufficiently explained why she credited some and discounted the rest. Furthermore, to the extent the ALJ committed any technical error at all in failing to expressly include a function-by-function assessment, any such error is harmless. *See Hendron v. Colvin*, 767 F.3d 951, 956 (10th Cir. 2014) (rejecting claim that ALJ erred by computing a sedentary work RFC "without an explicit function-by-function analysis"); *see also Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1166 (10th Cir. 2012) ("Where, as here, we can follow the adjudicator's reasoning in conducting our review, and can determine that correct legal standards have been applied, merely technical omissions in the ALJ's reasoning do not dictate reversal. In conducting our review, we should, indeed must, exercise common sense…. "[W]e cannot insist on technical perfection.").

The Tenth Circuit has held that "[c]redibility determinations are peculiarly the province of the finder of fact, and we will not upset such determinations when supported by substantial evidence." *Kelper v. Chater*, 68 F.3d 387, 390 (10th Cir. 1995) (quoting *Diaz v. Secretary of Health & Human Servs.*, 898 F.2d 774, 777 (10th Cir. 1990)). In assessing the credibility of a claimant, an ALJ must articulate specific reasons for the findings he or she makes and must not only offer a bare conclusion. *Id.*

In her decision, the ALJ offered a nuanced assessment of Plaintiff's credibility that is worth quoting in full:

> The claimant's allegations are found to be not fully credible and treatment notes in the record do not sustain the claimant's allegations of a disabling condition. *The claimant's medically determinable impairments could reasonably be expected to produce the alleged pain and symptoms; however, the objective medical evidence does not reasonably substantiate his allegations about intensity, persistence and functionally limiting effects of the symptoms.* The claimant testified that side effects from his injection therapy prevent him from working; however, the available evidence fails to support his allegation of severe fatigue. There is also no evidence of the severe nausea or vomiting that he alleged. The claimant's chest pain and respiratory infections were fairly well controlled with medication and the claimant reported that he was exercising on a regular basis. He testified that he could prepare meals, shop for groceries and monitor his children's homeschooling during the day. He also testified that he was able to keep his area of the home clean and drive. The claimant's [sic] has a long work history; however, he stated that he stopped working as a dispatcher because the position was moved out of state and not because of his condition. *I acknowledge that the claimant does experience some limitations, but not to the extent alleged.*

AR 18 (emphasis added). With this explanation, the ALJ made clear that she found Plaintiff to be credible with respect to a significant portion of his testimony, but less so with respect to other portions. Then the ALJ identified specific reasons that supported her assessment with respect to those topics on which she found him not fully credible: lack of significant corroborating support

in the treatment records (or elsewhere); lack of objective evidence to substantiate Plaintiff's description of the extent, persistence, and intensity of his symptoms; Plaintiff's ability to carry out the activities of daily living; and Plaintiff having stopped work as a dispatcher because of a reason *unrelated* to his condition.[13]

Whether the Court would have evaluated Plaintiff's credibility differently if it were hearing his testimony live or reviewing the evidence *de novo* is not the question. The Court is constrained to review only whether the ALJ erred as a matter of law in her treatment of Plaintiff's credibility. It is not the proper role of this Court to substitute its judgment for that of the ALJ. "In reviewing the ALJ's decision, 'we neither reweigh the evidence nor substitute our judgment for that of the agency.'" *See Bowman*, 511 F.3d at 1272 (quoting *Casias*, 933 F.2d at 800). It is the Court's role, however, only to determine if the ALJ properly explained her reasoning for discounting Plaintiff's credibility.

The Court finds that the ALJ's credibility determination of Plaintiff conforms to the appropriate legal standard and is supported by substantial evidence. Therefore, and in concert with its earlier conclusions concerning the ALJ's consideration of Drs. Roche and Padilla, the Court will deny Plaintiff's omnibus argument that the ALJ erred in determining the RFC.

### C. Vocational Expert's Testimony

Plaintiff's last ground for remand is that the ALJ did not carry her burden at step five to prove that Plaintiff's RFC would permit him to perform other jobs in the national or regional

---

[13] In his Motion, Plaintiff pointedly disagrees with the ALJ's partial reliance on his self-professed daily exercise back in December 2009. *See* Pl.'s Mot. 21. Plaintiff emphasizes that December 2009 is before the February 2010 date on which he alleges the onset of his disability and, therefore, his ability to exercise daily two months beforehand is irrelevant, particularly when considering the content of Plaintiff's testimony. *See id.* But resolving evidentiary conflicts like this is a responsibility squarely within the province of the factfinder, here the ALJ. The ALJ obviously considered Plaintiff's ability to exercise on a daily basis immediately before the time period during which he alleges he was disabled as just one factor in her overall evaluation of his credibility. For many good reasons, not least because it did not hear or see Plaintiff testify, this Court is not permitted to second-guess credibility judgments like this one.

economy. *See* Pl.'s Mot. 23-25. Based on testimony by an impartial vocational expert, the ALJ found that Plaintiff could perform a range of sedentary jobs (with additional restrictions) that included the semi-skilled position of "appointment clerk" and the unskilled positions of "document preparer" and "jewelry preparer." AR 19.

Plaintiff first urges the Court to "take judicial notice" by using its "common sense" that the job of document preparer no longer exists. Pl.'s Mot. 23-24. But Plaintiff does not provide the Court with any case citation or any other source of law that would support the Court doing so. It could be that Plaintiff has Federal Rule of Evidence 201 in mind, but that rule permits a fact to be judicially noticed only if it "is not subject to reasonable dispute because it (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(a).[14] This Court – sitting in its appellate, not trial, capacity – cannot decide that something as obscure as whether the job of document preparer still exists is virtually beyond debate.[15]

Turning now to the job of jewelry preparer, the Court need not weigh in on the debate between the parties as to whether 15,000 jobs in the national economy is a "significant number." This is because the Court finds that the Commissioner has satisfied her burden of demonstrating that Plaintiff could perform the semi-skilled job of appointment clerk. Because neither party had addressed this issue in their principal briefs, and rather than simply concluding that Plaintiff had

---

[14] Plaintiff did not cite any reference sources, much less any unquestionably accurate ones, which would support his position that it is beyond all debate that the position of document preparer no longer exists.

[15] In a footnote, Plaintiff declares as "unreliable" the VE's testimony that there are 45,000 document preparer jobs in the national economy. Pl.'s Mot. 24 n.14. Then he cites two unpublished cases where other VEs in other states have testified to different numbers of the same job. *Id.* Once again, however, inviting this Court to revisit and reweigh the evidence that was before the ALJ is asking the Court to go beyond its "substantial evidence" standard of review. "The possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's findings from being supported by substantial evidence." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (quoting *Zoltanski v. F.A.A.*, 372 F.3d 1195, 1200 (10th Cir. 2004)).

waived any objection, the Court ordered supplemental briefing. ECF No. 27. Having now considered those briefs, as well as the evidence to which they refer and the cases and regulations on which they rely, the Court concludes that substantial evidence supports the ALJ's decision. The Court finds no error in the ALJ's reliance on Plaintiff's extended experience over nearly twenty years as manager of a karate studio, during which he spent significant time performing tasks closely aligned with those required of an appointment clerk, a position which Plaintiff concedes exists in significant numbers in the national economy.

Based on the record, the Court finds and concludes that substantial evidence supports the ALJ's determination at step five that Plaintiff is able to perform at least two categories of jobs that exist in significant numbers in the national economy. Therefore, the Court will deny Plaintiff's third and final claim.

## VI.    CONCLUSION

For these reasons, the Court holds that the ALJ's decision applied the correct legal standards and was supported by substantial evidence. **IT IS THEREFORE ORDERED** that Plaintiff's Motion is **DENIED**, the Commissioner's final decision is **AFFIRMED**, and this action is **DISMISSED**.

THE HONORABLE GREGORY J. FOURATT
UNITED STATES MAGISTRATE JUDGE
***Presiding by Consent***